UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIEKE BAYNE and ALYSSA HART, individually on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br> v.<br><br>TARGET CORPORATION,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

   Plaintiffs Mieke Bayne and Alyssa Hart ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Target Corporation ("Target" or "Defendant") for the manufacture, marketing, and sale of the Heyday Charging Cable (the "Product" or the "Heyday Charger") identified below. Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## **<u>NATURE OF ACTION</u>**

   1.  This is a class action against Defendant for the manufacture and/or sale of the Heyday Charger, which suffered from a design defect. Specifically, the Product is defective in that it is manufactured using substandard or inferior materials (the "Defect"). The Defect causes the Product to break or otherwise stop producing a battery charge after approximately one week of normal use; this is caused by the plug breaking off the cable, the plug overheating and becoming unusable, and/or the wires inside the cable breaking.

   2.  No matter the way in which the Defect manifests itself, it is all the result of Defendant's common conduct and shoddy manufacturing. And regardless of the specific

1

manifestation, the Defect renders the Product unsuitable for its principal and intended purpose: charging consumers' cellular phones.

3. Had Plaintiffs been aware of the Defect, they would not have purchased the Product, or would have paid significantly less for it.

4. Plaintiffs bring their claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Product for (i) violation of New York General Business Law § 349; (ii) violation of New York General Business Law § 350; (iii) fraud; (iv) unjust enrichment; (v) breach of implied warranty; and (vi) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

**PARTIES**

5. Plaintiff Mieke Bayne is, and at all times relevant to this action has been, a resident of Bronx, New York and a domiciliary of New York. In December 2020, Ms. Bayne purchased the Product from a Target store located in New York. Ms. Bayne purchased the Product because she believed it was fit for use as a cellular phone charger. However, the Product Ms. Bayne purchased was not fit to charge her cellular phone battery due to the Defect. Ms. Bayne would not have purchased the Product or would have paid significantly less for the Product had she known that the Product was unfit to perform its intended purpose.

6. The Product Ms. Bayne purchased malfunctioned a week after she purchased it as a result of the Defect. Accordingly, Ms. Bayne has not been able to use and cannot use the Product since that time. Ms. Bayne stopped using the Product long before she ever contemplated litigation.

7. Ms. Bayne reviewed the Product's packaging prior to purchase, and expressly relied on Defendant's representations and warranties in deciding whether to purchase the

Product. Defendant disclosed on the packaging that the Product was a charging cable and described features typical of phone chargers. Further, Defendant impliedly warranted that the Product would be suitable for use as a phone charger that would be capable of restoring a phone's battery. However, Defendant did not disclose the Defect. Had Defendant disclosed the Defect, Ms. Bayne would not have purchased the Product because the Defect would have been material to her, or at the very least, she would have purchased the Product at a substantially reduced price.

8. Plaintiff Alyssa Hart is, and at all times relevant to this action has been, a resident of Monroe, New York and a domiciliary of New York. In June 2021, Ms. Hart purchased the Product from a Target store located in New York. Ms. Hart purchased the Product because she believed it was fit for use as a cellular phone charger. However, the Product Ms. Hart purchased was not fit to charge her cellular phone battery due to the Defect. Ms. Hart would not have purchased the Product or would have paid significantly less for the Product had she known that the Product was unfit to perform its intended purpose.

9. The Product Ms. Hart purchased malfunctioned a week after she purchased it as a result of the Defect. Accordingly, Ms. Hart has not been able to use and cannot use the Product since that time. Ms. Hart stopped using the Product before she ever contemplated litigation.

10. Ms. Hart reviewed the Product's packaging prior to purchase, and expressly relied on Defendant's representations and warranties in deciding whether to purchase the Product. Defendant disclosed on the packaging that the Product was a charging cable and described features typical of phone chargers. Further, Defendant impliedly warranted that the Product would be suitable for use as a phone charger that would be capable of restoring a phone's battery. However, Defendant did not disclose the Defect. Had Defendant disclosed the Defect,

Ms. Hart would not have purchased the Product because the Defect would have been material to her, or at the very least, she would have purchased the Product at a substantially reduced price.

11. Defendant Target, Corp. is a Minnesota corporation with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant markets and distributes the Product throughout the United States and the State of New York, and the Product is manufactured exclusively for Defendant's stores. Defendant sells its products directly to consumers in Target stores and on the Target website.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under a law of the United States (the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*). This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claim under the Magnuson-Moss Warranty Act that they form part of the same case or controversy under Article III of the United States Constitution.

13. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within this District and a substantial portion of the events that gave rise to Plaintiffs' claims occurred in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiffs' claims took place within this District because Plaintiffs purchased the Product in this District.

**COMMON FACTUAL ALLEGATIONS**

15. Defendant Target is a retail store franchise that owns and operates over 1,900 general merchandise stores nationwide. Among the various items sold by Defendant is the Heyday Charger, which is the product at issue here.

16. On the Product's packaging, Defendant represents and warrants that the Product has "high charging speed," and is "Made for iPhone" and "iPad".

17. The Product is sold exclusively by Defendant.

18. The Product is of extremely poor quality and uses inferior manufacturing materials, which causes the Product to break and cease working as a phone charger shortly after purchase. The Defect can cause the plug to break off the cable, the plug to overheat and become unusable, and the wires inside the cables to break. All of these problems, however, arise from the same Defect itself.

19. Ultimately, the Defect causes the Product to not charge phone and device batteries as intended and advertised. The Defect is substantially likely to materialize during the useful life of the Product.

20. Upon information and believe, Target has sold hundreds of thousands of Heyday Chargers at approximately $10 each. Thus, Target has profited enormously from its failure to disclose the Defect.

21. Defendant made partial representations to Plaintiffs and class members, while suppressing the Defect. Specifically, by displaying the Product and describing its features, the product packaging implied that the Product was suitable for use as an iPhone and iPad battery charger, without disclosing the Defect, which makes the Product useless.

22.     Defendant has long known of the Defect. Defendant Target operates a website that allows consumers to purchase products as well as post reviews about its products.

23.     Since at least 2019, Defendant has received numerous negative reviews on the Product's page. Yet Defendant continues to sell the defective Product anyway.

24.     For instance, around 2019, a consumer by the screen name "mlpnk34" wrote a review of the Product on Defendant's website and gave the Product one star out of five. The review stated: "I've purchased two of these, the braided cable and the flat cable, and neither lasted more than a couple of weeks. I'm very careful with my cables so as not to bend them and break the wires near the port. They just quit working. Total waste of money. The $5 cables from the bargain section last longer."

25.     Around 2020, another consumer by the screen name "Jen" wrote a review of the Product on Defendant's website and also gave the Product one star, out of five. The review stated: "I had the braided 6 ft cord for less than 2 weeks. Last night I tried to plug it in and the part that plugs into the phone came off. No pushing. Just broke off when I tried to charge my phone."

26.     In early 2021, a consumer by the screen name "Fire Hazard" wrote a review of the Product on Defendant's website and also gave the Product one star, out of five. The review stated: "It just started on fire. I smelled something burning and it was smoking, red spark, I burned by thumb. Very scary. This could have burnt our house down."

27.     Also in early 2021, a consumer by the screen name "SenoraB" wrote a review of the Product on Defendant's website and also gave the Product one star, out of five. The review stated: "I should've looked at the reviews first! After a few months it has just stopped working. Not worth the money."

28. Defendant Target was alerted hundreds of times about the Product Defect through online reviews. For example, the Heyday 6' Lightning to USB-A Braided Cable – Ocean Teal/Navy has an average of 2.2 stars out of five, based on 323 reviews. Only 22% of the reviewers would recommend another purchase the Product. These reviews also included photos of the Product Defect.





29.     Further, Defendant was alerted about the Defect due to consumer complaints filed with the CPSC.¹

---

¹ Per federal regulations, all safety reports that are submitted online through the CPSC website are sent directly to the product's manufacturer and retailers. As set forth in more detail below, the CPSC website indicates that all safety complaints referenced herein were sent to Defendant, including the dates on which they were sent. Defendant also monitors safety complaints from the CPSC, and thus Defendant would have independently become aware of each safety report referenced herein separate and apart from noticed received from the CPSC.

30. For instance, on September 17, 2019, a consumer submitted a report to the CPSC concerning a Heyday Charging Cable. The complaint stated: "I used the [H]eyday usb cord to charge my [REDACTED]. It gave me a 2nd degree burn on my leg." The consumer stated that they sought treatment from a medical professional. The CPSC also sent this complaint to Target on October 3, 2019.

31. In another instance, on February 13, 2019, a consumer submitted a report to the CPSC concerning the Product. The complaint stated: "[W]hile sitting in the passenger seat of my vehicle, the phone charger I had plugged into my husband's cell phone started smoking and burning. I immediately pulled the phone charger from the phone and unplugged it from the car, but it had already melted both the charger and the charge port on the phone." The consumer stated that they independently contacted and alerted the manufacturer about this defect. The CPSC also sent this complaint to Target on February 28, 2019. Hence, Target was alerted twice about this incident—once by the consumer directly and then again later by the CPSC.

32. In total, Defendant received 8 reports of the Defect through the CPSC.

33. Defendant also would have had notice of the Defect as a result of product returns.

34. Thus, information from customer returns and complaints made directly to Defendant, whether alone or in the aggregate, would have put Defendant on notice of the Defect. Nonetheless, Target failed to recall the Product, allowing innumerable consumers to make worthless purchases.

35. In short, Plaintiffs and Class members purchased the Product, which was made from inferior and shoddy manufacturing components (the Defect) and thus breaks shortly after purchase. While the Defect may manifest itself in different ways—such as the plug breaking or the cable overheating—each issue results from the same common problems with the Product and

9

the same common manufacturing practices by Defendant. And the end result is also always the same: the Product is worthless because it is unfit and unusable as a phone charger, its sole purpose.

## CLASS REPRESENTATION ALLEGATIONS

36. Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Product (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

37. Plaintiffs also seek to represent a subclass of all Class Members who purchased the Product in the State of New York (the "New York Subclass") (collectively with the Class, the "Classes").

38. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

39. At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and New York Subclass ("Class Members" and "Subclass Members," respectively). However, given the number of Defendant's retail stores in the United States selling the Product, Plaintiffs believe that Class and Subclass Members are so numerous that joinder of all members is impracticable.

40. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    (a)    whether Defendant misrepresented and/or failed to disclose material facts concerning the Product;

    (b)    whether Defendant's conduct was unfair and/or deceptive;

    (c)    whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Classes;

    (d)    whether Plaintiffs and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

41.    With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the New York General Business Law § 349 and § 350.

42.    Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Product, and Plaintiffs sustained damages from Defendant's wrongful conduct.

43.    Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Classes.

44.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the unsatisfactory nature of Defendant's recall.

45.    The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas

another might not. In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

## COUNT I
## Violation Of New York General Business Law § 349

46. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

47. Plaintiffs bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

48. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

49. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

50. Plaintiffs and members of the New York Subclass are consumers who purchased the Product from Defendant for their personal use.

51. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, failing to disclose that the Product contained the Defect, which made it unsuitable and unusable for its intended purpose (*i.e.*, charging phones).

52. Defendant intentionally concealed and omitted material facts regarding the true nature of the Product.

53. The foregoing deceptive acts and practices were directed at consumers.

54. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Product to induce consumers to purchase the same.

55. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

56. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs and members of the New York Subclass have sustained from having paid for and used Defendant's products.

57. As a result of Defendant's violations, Plaintiffs and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Product on the same terms, if at all, if they knew that the Product had the Defect; and (b) the Product does not have the characteristics, uses, benefits, or qualities as promised.

58. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
**Violation Of New York General Business Law § 350**

59. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

60. Plaintiffs bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

61. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

62. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

63. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

64. Defendant's false, misleading, and deceptive representations and omissions of fact about the Product were and are directed towards consumers.

65. Defendant's false, misleading, and deceptive representations and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

66. Defendant's false, misleading, and deceptive representations and omissions have resulted in consumer injury or harm to the public interest.

67. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiffs and the New York Subclass have suffered and continue to suffer economic injury.

68. As a result of Defendant's violations, Plaintiffs and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Product on the same terms, if at all, if they knew that the Product had the Defect; and (b) the Product does not have the characteristics, uses, benefits, or qualities as promised.

69. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
**Fraudulent Omission**

70. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

71. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

72. This claim is based on fraudulent omissions concerning the utility of the Product. As discussed above, Defendant failed to disclose the Defect.

73. The false and misleading omissions were made with knowledge of their falsehood. Defendant is a nationwide general merchandise retailer who knew of reports of the Product's defective nature. Nonetheless, Defendant continued to sell its worthless battery chargers to unsuspecting consumers.

74. The false and misleading omissions were made by Defendant, upon which Plaintiffs and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and members of the proposed Classes to purchase the Product.

75. The fraudulent actions of Defendant caused damage to Plaintiffs and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT IV
### Unjust Enrichment

76. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

77. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

78. Plaintiffs and members of the Classes conferred benefits on Defendant by purchasing the Product.

79. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class and Subclass Members' purchases of the Product. Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Product was unfit for use as a battery charger. These omissions caused injuries to Plaintiffs and members of the Classes because they would not have purchased the Product if the true facts were known.

80. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT V
## Breach of Implied Warranty

81. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

82. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

83. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, impliedly warranted that the Product was fit for its ordinary purpose as a phone charger.

84. Defendant breached the warranty implied in the contract for the sale of the defective Product because it could not pass without objection in the trade under the contract description, the Product was not of fair or average quality within the description, and the Product was unfit for its intended and ordinary purpose because the Product manufactured by Defendant was defective in that it contained the Defects, and as such is not generally recognized as fit for

16

consumer use. As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

85. Plaintiffs and members of the Classes purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose of charging batteries.

86. The Product was not altered by Plaintiffs or members of the Classes.

87. The Product was defective when it left the exclusive control of Defendant.

88. Defendant knew that the Product would be purchased and used without additional testing by Plaintiffs and members of the Classes.

89. The Product was defectively manufactured and unfit for its intended purpose, and Plaintiffs and members of the Classes did not receive the goods as warranted.

90. Defendant was in vertical privity with Plaintiffs and members of the Classes because it sells its products directly to consumers in Target stores and on the Target website.

91. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and members of the Classes have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product contained the Defect, making it unfit for consumer use; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

## COUNT VI
### Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

92. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

93. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

94. The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

95. Plaintiffs and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

96. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

97. In connection with the marketing and sale of the Product, Defendant impliedly warranted that the Product was fit for use as battery charger. The Product was not fit for use as a battery charger due to the Defect described in the allegations above.

98. By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiffs and members of the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and members of the Classes.

99. Plaintiffs and members of the Classes were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Product if they knew the truth about the defective nature of the Product.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e) An award of statutory penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief;

(h) For an order awarding Plaintiffs and the Classes.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demands a trial by jury of all issues so triable.

Dated: July 9, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  /s/ Max S. Roberts
         Max S. Roberts

Max S. Roberts
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

Email: ltfisher@bursor.com

*Attorneys for Plaintiffs*