**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

MIEKE BAYNE and ALYSSA HART, individually
on behalf of themselves and all others similarly
situated,

               1:21-CV-05938 (AJN)

        Plaintiffs,

    -against-

TARGET CORPORATION,

        Defendant.

_____

**DEFENDANT TARGET CORPORATION'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................................ 3

STANDARD OF REVIEW ............................................................................................ 8

ARGUMENT .................................................................................................................. 9

   A.   Plaintiffs Fail to State a Claim for Breach of Implied Warranty ........................ 9
      1.   Breach of Implied Warranty Under New York Law. ................................... 9
      2.   The Demand Letter Failed to Provide Notice of any Alleged Breach. ....... 10
      3.   Plaintiffs Fail to Otherwise Allege Target Had Knowledge of Any Defect ........... 12

   B.   Plaintiffs' Magnuson-Moss Warranty Act Claim Must Be Dismissed ........................... 13
      1.   Plaintiffs Fail to Meet the MMWA ......................................................... 13
           Minimum Pleading Standard for Class Action Complaints .......................... 13
      2.   Plaintiffs' MMWA Claim Also Fail ......................................................... 14
           Because They Do Not State a Claim Under State Law. ............................... 14

   C.   Plaintiffs Fail to State a Claim Under New York General Business Law § 349 ............. 14
      1.   Plaintiffs Do Not Allege that Target Was Deceptive .................................... 15
      2.   Plaintiffs Do Not Allege Any Actual Injury. ............................................. 17

   D.   Plaintiffs Fail to State a Claim Under New York General Business Law § 350 ............. 19

   E.   Plaintiffs Fail to State a Claim for Fraudulent Omission ................................... 19

   F.   Plaintiffs' Unjust Enrichment Claim Must Be Dismissed ................................. 23

   G.   Plaintiffs Lack Class-Action Standing ......................................................... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ackerman v. Coca-Cola Co.*,
2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010)) ........................................ 9

*Altschuler v. Univ. of Penn. Law Sch.*,
1997 U.S. Dist. LEXIS 3248 (S.D.N.Y. Mar. 21, 1997) ........................................ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 8

*Atik v. Welch Foods, Inc.*,
2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sep. 30, 2016) ..................................... 25

*Babayev v. Medtronic, Inc.*,
228 F. Supp. 3d 192 (E.D.N.Y. 2017) ............................................................... 10

*Ballas v. Virgin Media, Inc.*,
60 A.D.2d 712 (2d Dep't 2009) ........................................................................ 19

*Baron v. Pfizer, Inc.*,
42 A.D.3d 627 (3rd Dep't, 2007) ...................................................................... 18

*Barreto v. Westbrae Nat., Inc.*,
2021 U.S. Dist. LEXIS 3436 (S.D.N.Y. Jan. 7, 2021) ......................................... 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................... 8

*Bildstein v. MasterCard Int'l Inc.*,
329 F. Supp. 2d 410 (S.D.N.Y. 2004) ........................................................... 15, 17

*Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004) ............................................................................. 23

*Brodie v. Green Spot Foods, LLC*,
503 F. Supp. 3d 1  (S.D.N.Y. 2020) .................................................................. 12

*Brown v. Daikin Am., Inc.*,
2021 U.S. Dist. LEXIS 85195 (S.D.N.Y., 2021) ................................................ 24

*Budhani v. Monster Energy Co.*,
    2021 U.S. Dist. LEXIS 54551 (S.D.N.Y. Mar. 12, 2021) ........................................ 9

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
    2021 U.S. Dist. LEXIS 19624 (S.D.N.Y. Feb. 2, 2021) ............................... 10, 22, 24

*Cohain v. Klimley*,
    2010 U.S. Dist. LEXIS 98870 (S.D.N.Y., 2010) ...................................................... 21

*Connaughton v. Chipotle Mexican Grill, Inc.*,
    29 N.Y.3d 137 (2017) .............................................................................................. 23

*Davis v. Hain Celestial Grp.*,
    297 F. Supp.3d 327 (E.D.N.Y. 2018) ...................................................................... 22

*Diaz v. Paragon Motors of Woodside, Inc.*,
    424 F. Supp. 2d 519 (E.D.N.Y. 2006) ..................................................................... 14

*Donahue v. Ferolito, Vultaggio & Sons*,
    13 A.D.3d 77 (1st Dep't 2004) .......................................................................... 15, 19

*Ebin v. Kangadis Food Inc.*,
    2013 U.S. Dist. LEXIS 107224 (S.D.N.Y., 2013) ................................................... 14

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ...................................................................................... 23

*Floyd v. Am. Honda Motor Co.*,
    966 F.3d 1027 (9th Cir.  2020) ................................................................................ 14

*Goldberg v. Gray*,
    2016 U.S. Dist. LEXIS 100802 (N.D.N.Y. 2016) ................................................... 20

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002) ........................................................................................ 15, 19

*Grandy v. BAC Home Loan Servicing, LP*,
    2012 U.S. Dist. LEXIS 47082 (E.D.N.Y., 2012) ..................................................... 21

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) .................................................................................... 21

*Harris v. Coleman*,
    863 F. Supp. 2d 336 (S.D.N.Y. 2012) ....................................................................... 8

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010).................................................................................. 8

*Hubbard v. Gen. Motors Corp.*,
   1996 U.S. Dist. LEXIS 6974 (S.D.N.Y. May 22, 1996) ...................................... 10

*In re GM LLC Ignition Switch Litig.*,
   2016 U.S. Dist. LEXIS 92499 (S.D.N.Y., 2016)................................................... 14

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................. 22

*Izquierdo v. Panera Bread Co.*,
   450 F. Supp. 3d 453 (S.D.N.Y. 2020)................................................................... 17

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,
   419 F. Supp. 3d 668 (S.D.N.Y. 2019)................................................................... 15

*Morales v. Kimberly-Clark Corp.*,
   2020 U.S. Dist. LEXIS 93307 (S.D.N.Y. May 27, 2020) ............................... 12, 21

*Moses v. Citicorp Mortg. Inc.*,
   982 F. Supp. 897 (E.D.N.Y. 1997) ....................................................................... 16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012).................................................................................. 25

*Novartis Corp. v. F.T.C.*,
   223 F.3d 783 (D.C. Cir. 2000) .............................................................................. 16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y. 20 (1995) ................................................................................................. 15

*Parrish v. Arvest Bank*,
   717 F. App'x 756 (10th Cir. 2017)........................................................................ 21

*Pronti v. DML of Elmira, Inc.*,
   103 A.D.2d 916 (3d Dep't 1984)........................................................................... 11

*Saratoga Spa & Bath v. Beeche Sys. Corp.*,
   230 A.D.2d 326 (3rd Dept. 1997) ......................................................................... 10

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
   2006 U.S. Dist. LEXIS 61872 (E.D.N.Y. Aug. 30, 2006)...................................... 9

*Scott v. Bell Atl. Corp.*,
    282 A.D.2d 180 (1st Dep't 2001) ................................................................ 15

*Sitt v. Nature's Bounty, Inc.*,
    2016 U.S. Dist. LEXIS 131564 (E.D.N.Y., 2016) ..................................... 24

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43, 56 (1999) ....................................................................... 15, 18

*Strishak & Assocs., P.C.*,
    300 A.D.2d 608 (2nd Dep't 2002) ............................................................ 19

*TVT Records v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ....................................................................... 20

*Vaughn v. Consumer Home Mortg. Co.*,
    470 F. Supp. 2d 248 (E.D.N.Y. 2007) ..................................................... 23

*Voiceone Commc'ns, LLC v. Google Inc.*,
    2014 WL 10936546 (S.D.N.Y. Mar. 31, 2014) .......................................... 9

*Walsh v. Ford Motor Co.*,
    807 F.2d 1000, 1012 (D.C. Cir. 1986) ..................................................... 14

*Wilner v. Allstate Ins. Co.*,
    71 A.D.3d 155 (2nd Dept., 2010) ............................................................ 18

## Statutes

15 U.S.C. §§ 2301 ................................................................................... 4, 14

Fed. R. Civ. P. 12(b)(6) ............................................................. 1, 3, 8, 12, 25

Fed. R. Civ. P. 9(b) ....................................................................................... 20

N.Y. U.C.C. 2-607 ..................................................................................... 2, 10

N.Y.U.C.C. § 2-314 ....................................................................................... 9

N.Y.U.C.C. § 2-714 ..................................................................................... 11

New York C.P.L.R. § 3016(b) ..................................................................... 20

Defendant Target Corporation ("Target" or "Defendant"), respectfully submits this Memorandum of Law in support of its motion to dismiss the Amended Complaint of Plaintiffs Mieke Bayne ("Bayne") and Alyssa Hart ("Hart and, with Bayne, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a valid cause of action.

## PRELIMINARY STATEMENT

Plaintiffs initially filed their Complaint in this action on July 9, 2021 (ECF Docket No. 1, the "Complaint"), alleging claims that were devoid of any merit. In essence, Plaintiffs asserted they had purchased an unspecified product from Target that did not function properly for as long as they had expected and, rather than seek a refund of the purchase price or replacement of the defective item, Plaintiffs rushed into federal court hoping to recover a windfall award. Plaintiffs scoured Target's website to cherry-pick negative reviews about a range of products – many of which do not even appear to be reviews of the products Plaintiffs bought – to support an allegation that the unidentified product (or products) were defective in some manner they refuse to specify. In fact, Plaintiffs and their counsel contended Plaintiffs should represent a nationwide class of consumer and a subclass of New York consumers who purchased some unspecified product(s) on the grounds that they share some unidentified defect.

In searching Target's website for quotable material for their class action complaint, however, neither Plaintiffs nor their counsel apparently noticed that Target offers a one-year warranty on its products, expressly stating that the products may be returned in exchange for a full refund up to 365 days from the date of purchase – a time period which encompasses both Plaintiffs' alleged purchases. Rather than utilize the warranty Target provides, Plaintiffs instead decided to rush to court, alleging Target had actually breached an implied warranty owed to them and the other purchasers of the mystery product(s). It is this breach of implied warranty that provides the

basis for each and every one of Plaintiffs' claims. Of course, New York law does not permit Plaintiffs' gambit. To the contrary, New York's Uniform Commercial Code required Plaintiffs to provide Target with notice of its alleged breach of warranty.[1] Such notice would have afforded Target the opportunity to refund or exchange Plaintiffs' allegedly defective product, saving the parties' and the Court from needlessly expending resources to litigate this lawsuit.

Target timely moved for dismissal of each of Plaintiffs' specious claims. After being educated on the law, Plaintiffs subsequently served a so-called "Demand Letter" that purported to provide notice of the allegedly defective products Plaintiffs purchased – again, without ever identifying the product. Notwithstanding the glaring deficiencies in the "Demand Letter," Target offered a refund to the Plaintiffs (asking only that they identify the product they purchased and the amount they paid). Rather than respond to Target, Plaintiffs filed an amended complaint (ECF Docket No. 21, the "AC"), asserting the same claims set forth in the original Complaint.

Plaintiffs' bad-faith money grab remains completely meritless, and Target is entitled to dismissal of each and every one of Plaintiffs' claims, all of which fail as a matter of law. The breach of implied warranty claim fails, as set forth before, including because Plaintiffs' "Demand Letter" failed to provide notice of any alleged defect of any product they purchased, and because notwithstanding such deficiencies, Target has offered to make Plaintiffs whole. Plaintiffs also assert related federal claims under the Magnuson Moss Warranty Act, but such claims fail because as they merely repeat Plaintiffs' state law claims, and the complaint fails to name the requisite number of plaintiffs required by the statute to be entitled to liability thereunder. Plaintiffs' claims under the New York General Business Law, as well as their common-law claims for fraudulent

---

[1] N.Y. U.C.C. 2-607(3)(a) (stating to assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]")

omission, and unjust enrichment must also be dismissed because they are, at their essence, entirely duplicative of the breach of warranty claim and likewise fail to sufficiently allege that the products they purchased were defective, that Target had knowledge of such a defect, and that Target intentionally withheld such information from Plaintiffs.

Plaintiffs' Amended Complaint should be dismissed in its entirety, with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs initiated this action by filing a purported class action complaint on July 9, 2021 (ECF Docket No. 1, the "Complaint"). Defendant brought a timely motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 13-16). Pursuant to this Court's Individual Practices in Civil Cases, Rule F, Plaintiffs opted to respond to Defendant's motion by filing the AC, which they did on September 21, 2021. Pursuant to the order of this Court entered September 2, 2021 (ECF No. 19), Defendant's time to respond to the AC was extended to October 19, 2021. Defendant now moves to dismiss the AC pursuant to Fed. R. Civ. P. 12(b)(6).  For the purposes of this motion – and this motion only – Defendant relies on the allegations set forth by Plaintiffs in the Complaint and accepts them as true. For all other purposes, Defendant denies each and every allegation in the Complaint.[2]

The AC, exactly like the Complaint before it, essentially asserts two alleged harms relating to a charging cable used to charge the battery of certain iPhone and iPad products (the "Product" or the "Heyday Charger"). First, Bayne asserts that she purchased a Heyday Charger from Defendant and that it malfunctioned approximately one week after she purchased it. (AC ¶ 6) Second, Hart asserts that she purchased a Heyday Charger from Defendant and that it

_____

[2] Reference is also made herein to the Declaration of David Carrier, dated October 12, 2021, submitted in support of the instant motion (the "Carrier Dec.") and exhibits annexed thereto.

malfunctioned approximately one week after she purchased it. (AC ¶ 9.) Based solely on these allegations, Plaintiffs bring causes of action under the New York General Business Law ("NYGBL"), claims for fraud, breach of implied warranty and unjust enrichment, and a claim arising under the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq*., the "MMWA"). Also based solely on the allegations that the Heyday Chargers Plaintiffs bought failed to work after one week, Plaintiffs seek to represent "all persons in the United States who purchased" Heyday Chargers (the "Class") and all Class members who purchased Heyday Chargers in the State of New York (the "Subclass" and, collectively with the Class, the "Classes"). (AC ¶¶ 39-40.)

Target sells an array of charging cables under the "heyday" brand-name. The "heyday" charging cables come in a variety of colors, cord lengths, USB ports (both USB A and USB C), and include both car and wall plug-in chargers. Carrier Dec., ¶ 5.[3] The AC does not identify which of the many variety of charging cables Bayne allegedly purchased. The AC asserts that Hart "purchased the 3-foot and 6-foot versions of the Product," but offers no other details as what product she purchased. (AC ¶ 8). The AC does not identify the device that either Plaintiff allegedly sought to charge with the Heyday Charger. And the AC does not describe how Plaintiffs allegedly used the Heyday Chargers. The only damages Plaintiffs allege are self-serving assertions that, had they known of the alleged defects to the Heyday Chargers, they "would not have purchased" the chargers or "would have purchased the Product at a substantially reduced price." (AC ¶ 10.)

The Complaint also fails to identify even a single misleading statement allegedly made by Target. The Complaint merely states, in conclusory terms, that "Defendant disclosed on the

---

[3] The AC falsely alleges that "The Product comes in various lengths—like 3-feet and 6-feet—but all versions of the Product are otherwise identical" (AC, ¶ 16), although any search on Target's website would show that there are numerous, non-identical versions of Heyday Chargers.

packaging that the Product was a charging cable and described features typical of phone chargers."
(AC ¶¶ 7, 10) The Complaint does not quote from any alleged disclosure on the packaging and
does not identify the alleged "features typical of phone chargers." The only words Plaintiffs
identify as appearing on the packaging are "high charging speed" and "'Made for iPhone' and
'iPad.'"[4] (AC, ¶ 17.) Notably, Plaintiffs do not make any allegations that the packaging included
any disclosure as to how long the Heyday Charger was expected or intended to last. Plaintiffs
allege the Heyday Charger packaging "impliedly warranted that the Product would be suitable for
use as a phone charger and would be capable of restoring a phone's battery." (AC ¶¶ 7, 10.)
Plaintiffs do not allege that the Heyday Charger failed to ever restore a phone's battery – Plaintiffs
claim only that they Heyday Chargers they purchased ceased working after approximately one
week. Plaintiffs do not, however, identify what caused the Heyday Chargers they actually
purchased to stop working. The Complaint asserts that a defect to the Heyday Charger may "cause
the plug to break off the cable, the plug to overheat and become unusable, and the wires inside the
cables to break." (AC ¶ 19.) Plaintiffs now allege that Ms. Bayne's charger would "become too
hot to touch and thus unable to safely charge her phone or any other device (AC ¶ 6), and that one
of the products Ms Hart purchased had a "break at the tip," but fails to identify whether this
allegedly occurred to the 3-foot or 6-foot version. (AC ¶ 6).

Plaintiffs claim that Defendant has received eight (8) reports of consumer complaints
regarding Heyday Chargers through the Consumer Product Safety Commission ("CPSC"). (AC ¶
33). A search for the term "heyday" on the CPSC online database of public complaints regarding
consumer products (www.saferproducts.gov) returned eight (8) results as of July 28, 2021. Carrier

---

[4] Notwithstanding this allegation, neither Plaintiff alleges they used the Heyday Charger they
purchased to charge either an iPhone or iPad.

Dec., ¶ 8. These complaints (the "CPSC Complaints") allege failures with several different products, none of which Plaintiffs clearly allege they purchased and some of which are of a different nature entirely. These include: ten-foot charging cables for unspecified devices, three-foot charging cables for unspecified devices, a six-foot charging cable for an Android device, and wireless earbuds. *Id*. at ¶ 17.

The Complaint asserts that the Heyday Chargers allegedly purchased by Plaintiffs were previously the subject of the CPSC Complaints. (AC ¶¶ 30-33).  Clearly, this is not the case. The CPSC Complaints relating to the wireless earbuds and the Android device charging cable cannot possibly relate to the Heyday Chargers described by Plaintiffs that were purportedly "'Made for iPhone' and 'iPad.'" (AC ¶ 17.) Again, the Complaint does not identify anything about the Heyday Chargers beyond this fact, including whether the Heyday Chargers were braided, what their length was, or what type of port they used. Moreover, Plaintiffs cite to CPSC Complaints regarding an alleged burn experienced by a user and an alleged incident of product smoking and melting. But no such allegation is made in the instant Complaint and, therefore, they are entirely irrelevant.[5]

The alleged reviews from Target's website that Plaintiffs self-servingly cherry-pick and partially quote from similarly have no bearing on Plaintiffs' allegations. The alleged reviews either fail to specifically identify the product they review (AC ¶¶ 25, 27, 28) or fail to assert any allegations whatsoever that the product reviewed is the same as either of the Heyday Chargers

---

[5] Nor is Plaintiffs' allegations concerning a 2019 recall relevant to Plaintiffs' claims. (AC ¶¶ 35-36). Specifically, that recall involved metal-wrapped 3 Foot Lightning USB charging cables. The hazard was identified as "The metal around the cord can become electrically charged if it contacts the USB wall charger plug prongs while charging, posing shock and fire hazards." (https://www.cpsc.gov/Recalls/2019/Target-Recalls-USB-Charging-Cables-Due-to-Shock-and-Fire-Hazards) (last accessed October 8, 2021). The Court may consider this information as further explained in n. 8, *infra*. Neither Plaintiff alleges they purchased a metal-wrapped charging cable or any hazard similar to what was set forth in the recall. It is entirely irrelevant.

purchased by Plaintiffs (AC ¶¶ 26, 29).

After Defendant's previous motion to dismiss revealed the many factual and legal deficiencies in Plaintiffs' Complaint, Plaintiffs provided Target with a letter dated August 31, 2021 (the "Demand Letter," annexed to the AC as Exhibit A (ECF No. 21-1)).[6] Plaintiffs claim that the Demand letter "advis[ed] Defendant that it breached an implied warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom." (AC ¶ 94).  Defendant responded to the Demand Letter with a letter of its own dated September 20, 2021 (the "Response Letter," a true and correct copy of which is annexed to the Carrier Dec. as Ex. E). As set forth in the Response Letter, the purported notice set forth in the Demand Letter was wholly defective, as the Demand Letter failed to identify product that either Bayne or Hart allegedly purchased, the price allegedly paid, the date of purchase, the place of purchase, or how the products allegedly failed. Notwithstanding these failures, Target offered to refund Plaintiffs the amounts they paid for the Products, asking only that Plaintiffs identify the Products and the amounts paid. Rather than do so, Plaintiffs filed the AC, alleging the same facts and claims set forth in the Complaint.

In sum, the AC should be dismissed for all the same reasons the Complaint was subject to dismissal. Plaintiffs do not sufficiently identify the product they allegedly purchased from Target, do not identify any representation or statement made by Target or the product's manufacturer regarding the product, do not explain how they used the product, do not explain how the product was defective, do not establish that Target had any notice that whatever product Plaintiffs may

---

[6] It is important to note that Plaintiffs' counsel violated Rule 4.2 of the New York Rules of Professional Conduct by directly contacting a party that they knew to be represented by counsel in this litigation. Moreover, the improper letter was simply delivered to Target's global headquarters and only was received by the appropriate persons through an act of sheer luck.

have purchased was defective, and Plaintiffs failed to accept Target's offer to refund their purchases. Despite these deficiencies, Plaintiffs allege that they seek to represent Classes of persons who also bought the unidentified Product with the unidentified defect pursuant to the unidentified statements or misrepresentations. (AC, ¶¶ 39-48). Plaintiffs acknowledge that they "do not know the exact number of members of the aforementioned" Classes (AC, ¶ 42). Indeed, how could they? Plaintiffs do not even allege with any detail the products they purchased.

Plaintiffs' AC, like the Complaint before it, is wholly inadequate and should be dismissed. Moreover, as Plaintiffs have now twice attempted and failed to plead their claims, and moved forward with filing the AC in bad faith after refusing Target's offer to refund their purchases of the Heyday Chargers, this action should be dismissed with prejudice and Plaintiffs should be foreclosed from filing further frivolous complaints.

## **<u>STANDARD OF REVIEW</u>**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court should utilize the "two-pronged approach" set forth by the U.S. Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See, e.g., Harris v. Coleman*, 863 F. Supp. 2d 336, 340, 341 (S.D.N.Y. 2012). First, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Second, "a court should determine whether the 'well pleaded factual allegations,' assumed to true, plausibly give rise to an entitlement to relief,'" meaning that they support an inference that the defendant acted unlawfully. *Id*. (citing *Iqbal*, 550 U.S. at 679). Rule 12(b)(6) also applies to a motion to dismiss based on the statute of limitations, such that a plaintiff bears the burden of "pleading facts sufficient to establish that the statutes of limitation should be tolled." *See Voiceone Commc'ns, LLC v. Google Inc*., No. 12 CIV.

9433, 2014 WL 10936546, at *7 (S.D.N.Y. Mar. 31, 2014) (citations omitted). Here, Plaintiffs'

AC fails to meet these standards, and should be dismissed.

## ARGUMENT

**A.    Plaintiffs Fail to State a Claim for Breach of Implied Warranty**

The sum of Plaintiffs' theories of liability emanate from—and circularly return to—its

generic claim for breach of an implied warranty that "the Product was fit for its ordinary purpose

as a phone charger." (AC ¶ 86.) But the AC collapses under the weight of Plaintiffs' failure to

properly provide Target with notice of any alleged product failure or defect, to subsequently reject

Target's offer to fully cure the alleged breach, and the AC's failure to allege that Target was aware

of any defect in regard the Heyday Chargers. Plaintiffs' implied warranty claim must be dismissed.

1.    Breach of Implied Warranty Under New York Law**.**

The implied warranty of merchantability is governed by New York Uniform Commercial

Code § 2-314(1); to be merchantable, goods "must be . . . fit for the ordinary purposes for which

such goods are used; and . . . conform to the promises or affirmations of fact made on the container

or label if any." N.Y. U.C.C. § 2-314(2). Goods also must be "fit for the ordinary purposes for

which such goods are used." *Id*. "Thus, liability for breach of warranty [of merchantability]

depends on 'the expectations for the performance of the product when used in the customary, usual

and reasonably foreseeable manners.'" *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 2006

U.S. Dist. LEXIS 61872 (E.D.N.Y. Aug. 30, 2006) (internal citations omitted). However, "[a]

warranty of merchantability . . . does not mean that the product will fulfill a buyer's every

expectation but rather simply provides for a minimum level of quality." *Budhani v. Monster

Energy Co.*, 2021 U.S. Dist. LEXIS 54551, at *33 (S.D.N.Y. Mar. 12, 2021) (quoting *Ackerman

v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010)).

To properly assert a claim for breach of an implied warranty of fitness for a particular purpose, "the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill." *Saratoga Spa & Bath v. Beeche Sys. Corp.*, 230 A.D.2d 326, 656 N.Y.S.2d 787, 790 (3rd Dept. 1997). Conclusory allegations will not suffice. *See Babayev v. Medtronic, Inc.*, 228 F. Supp. 3d 192, 216 (E.D.N.Y. 2017) ("Plaintiff conclusorily alleges that the [product] and/or its components were defective or adulterated. However, the pleading does not allege plausible facts that even suggest the nature of the defect or adulteration.").

Further, a plaintiff must provide notice to a seller of the alleged defect prior to filing suit. N.Y. U.C.C. 2-607(3)(a) (stating to assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"); *see also Campbell v. Whole Foods Mkt. Grp., Inc*., No. 1:20-cv-01291-GHW, 2021 U.S. Dist. LEXIS 19624, at *36, 2021 WL 355405 (S.D.N.Y. Feb. 2, 2021) ("Plaintiff's claim asserting a breach of the implied warranty of merchantability is also dismissed for failure to allege she gave Defendant notice of breach.")*; Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (dismissing breach of implied and express warranty claims where the complaint did not allege the plaintiff notified defendants of a breach); *Hubbard v. Gen. Motors Corp*., No. 95 Civ. 4362, 1996 U.S. Dist. LEXIS 6974, 1996 WL 274018, at *4-5 (S.D.N.Y. May 22, 1996) (same).

   2.   The Demand Letter Failed to Provide Notice of any Alleged Breach**.**

As set forth above, N.Y. U.C.C. § 2-607(3)(a) requires a plaintiff asserting a breach of the implied warranty of merchantability to provide notice of the alleged breach. Plaintiffs assert that

the Demand Letter provides such notice. (AC ¶ 94). But the Demand Letter does not actually provide Target notice of anything. The Demand Letter does not identify the actual product that either Bayne or Hart allegedly purchased, the price paid, the date of purchase, or from which Target store they purchased the products. Further, the Demand Letter suggests that the products either "broke *or* otherwise stopped producing a battery charge after one week of normal use," (emphasis added) but does not specify how the products apparently failed, or what caused the failures.

Moreover, even if the Demand Letter provided adequate notice of Plaintiffs' claim, Plaintiffs' damages for any alleged breach would be limited by N.Y.U.C.C. § 2-714 to "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." N.Y.U.C.C. § 2-714(2).[7] Notwithstanding the glaring deficiencies in the Demand Letter, Target has already offered to refund the full purchase price of the Products to Plaintiffs, and has simply that Plaintiffs identify the Products and the price they paid for them to facilitate this. Plaintiffs still have done neither, even in the AC. This further forecloses Plaintiffs' requested relief. *See, e.g., Pronti v. DML of Elmira, Inc*., 103 A.D.2d 916, 478 N.Y.S.2d 156, 157 (3d Dep't 1984) ("Moreover, plaintiff's refusal to permit Henredon to correct the alleged defects stripped them of any remedy against the defendant for breach of any express warranty . . .").

---

[7] Any additional damages are limited to those set forth in N.Y.U.C.C. § 2-715, as set forth in N.Y.U.C.C. § 2-714(3). Pursuant to N.Y.U.C.C. § 2-715, a plaintiff who shows entitlement to incidental damages may recover "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." N.Y.U.C.C. § 2-715(1). Consequential damages are limited to "injury to person or property proximately resulting from any breach of warranty." N.Y.U.C.C. § 2-715(2)(b). Here, the AC does not even allege that Plaintiffs have suffered any such incidental or consequential damages.

3.  <u>Plaintiffs Fail to Otherwise Allege Target Had Knowledge of Any Defect</u>

Even if Plaintiffs had given Target notice as required by law, which they did not, their claim must still be dismissed because Plaintiffs' reliance on alleged online customer reviews does not adequately allege that Target was aware of any defect in regard the Heyday Chargers. *See Morales v. Kimberly-Clark Corp.*, 2020 U.S. Dist. LEXIS 93307, at \*24 (S.D.N.Y. May 27, 2020)*.* Indeed, the reviews relied upon by Plaintiffs confirm that 22% of reviewers were satisfied with their Heyday Chargers enough that they would recommend the purchase of another one. (AC ¶ 29).[8] There is no possibility, then, that online reviews could have possibly informed Target that they Heyday Chargers were inherently defective or generally would fail to function properly. *Cf. Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) ("Amazon is correct that a retailer is not liable for breach of the implied warranty when latent defects that it could not have discovered through reasonable inspection cause injury. . . [but] that rule does not shield Amazon from liability, as ordinary inspection would have revealed that Better than Pasta contained konjac, an ingredient whose dangers are "well-known" and the subject of numerous negative reviews on Amazon.com. These allegations lead to a plausible inference that Amazon could have discovered through ordinary inspection that Better than Pasta was potentially unsafe for human consumption."). Unlike in *Brodie*, where an ingredient used in all of the product under the "Better than Pasta" brand name was known to be hazardous, Plaintiffs have not alleged that every HeyDay

---

[8] Counsel for Target was unable to find the same number of reviews alleged in the AC. Carrier Dec., ¶ 20 Regardless, the apparent website for the product identified in paragraph 29 of the AC is necessarily embraced by that pleading, and may properly be considered as part of this motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). In any event, Plaintiffs never allege that this—or any other specific product—is the one that they purchased.

Charger sold by Target is defective. Nor can they—according to the online reviews Plaintiffs themselves invoke (AC ¶ 29), a substantial number of the Heyday Chargers purchased by online reviewers properly functioned without complaint. And such online reviews represent only a tiny fraction of the Heyday Chargers Target has sold. It is simply not plausible that a smattering of online reviews could have possibly informed Target that any Heyday Charger was inherently defective, when millions have been sold and other purchasers report positive purchase experiences on the same platform Plaintiffs cite.

Even if accepting as true Plaintiffs' allegation that an inherent defect in the manufacture or design of the Heyday Charger, Target could not have been aware of such defect in the manner that Plaintiffs have pleaded, and the AC does not allege any basis for plausibly inferring that Target could or would have been aware of the alleged defect. Therefore, Plaintiffs' claim for breach of the implied warranty of merchantability must be dismissed.

**B.     Plaintiffs' Magnuson-Moss Warranty Act Claim Must Be Dismissed[9]**

Plaintiffs' MMWA claim must be dismissed because they fail to name the requisite number of plaintiffs as required by the MMWA and because their underlying state-law warranty claims fail to state a claim.

1.      Plaintiffs Fail to Meet the MMWA
        Minimum Pleading Standard for Class Action Complaints

Plaintiffs' MMWA claim must be dismissed for the threshold failure to name one hundred Plaintiffs who fall within the definition of the proposed class. Under the MMWA, claims brought

---

[9] Although Plaintiffs' AC pleaded only federal question jurisdiction arising from the MMWA claim as the basis for this Court's jurisdiction over this matter, if the Court dismisses the MMWA claim but does not dismiss all state law claims, it should retain jurisdiction over the remaining claims, as Defendant's Answer would subsequently allege facts sufficient to establish federal court jurisdiction under the Class Action Fairness Act.

under the federal statute are not "cognizable" if "the number of named plaintiffs is less than one

hundred." 15 U.S.C. § 2310(d)(3)(C). The two Plaintiffs here have only pleaded claims on behalf

of themselves as named parties, and assert the class allegations on behalf of unnamed individuals

purportedly comprising the putative class. Because Plaintiffs' MMWA claim cannot meet this

jurisdictional threshold, it must be dismissed. *Ebin v. Kangadis Food Inc.*, 2013 U.S. Dist. LEXIS

107224, at \*4, 2013 WL 3936193 (S.D.N.Y., 2013) (dismissing MMWA claim where

jurisdictional requirements were not met).[10]

> 2.    Plaintiffs' MMWA Claim Also Fail
>       <u>Because They Do Not State a Claim Under State Law</u>.

Plaintiffs' failure to adequately plead the breach of implied warranty claim also requires

dismissal of their claim under the MMWA. "The MMWA . . . creates no additional bases for

liability, but allows a consumer to recover damages under existing state law, and attorneys fees."

*Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (citing

*Walsh v. Ford Motor Co.*, 257 U.S. App. D.C. 85, 807 F.2d 1000, 1012 (D.C. Cir. 1986)). As a

result, "if a Plaintiff's state law warranty claim is dismissed, so is his or her MMWA claim." *In

re GM LLC Ignition Switch Litig.*, 2016 U.S. Dist. LEXIS 92499, at \*154 (S.D.N.Y. July 15, 2016).

As Plaintiffs have no viable state law warranty claim, the MMWA claim must also be dismissed.

**C.    Plaintiffs Fail to State a Claim Under New York General Business Law § 349**

NYGBL § 349 states that "[d]eceptive acts or practices in the conduct of any business,

---

[10] Plaintiffs failed to plead an alternative basis for federal court jurisdiction to hear the MMWA claim, but even if they, must be dismissed based on their inability to meet the MMWA's independent jurisdictional requirements. *Ebin*, 2013 U.S. Dist. LEXIS 107224, at \*4, 2013 WL 3936193 (dismissing MMWA claim and rejecting plaintiffs' argument that their MMWA claims were still viable if this Court has jurisdiction under CAFA); *see also Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020) (affirming district court decision holding that CAFA does not allow class plaintiffs to bypass the named plaintiff requirement of the MMWA).

trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful." NYGBL § 349(a). Generally, to state a claim under NYGBL § 349 the alleged deceptive acts and practices "must have an impact on consumers at large, and must be shown to be deceptive or misleading in a material way and to have injured the plaintiff as a result." *Scott v. Bell Atl. Corp.*, 282 A.D.2t 180, 183-84, 726 N.Y.S.2d 60, 60 (1st 'Dep't 2001), *aff'd, Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314 (2002). A plaintiff is also absolutely required to show actual harm. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999). It is not enough to simply allege that a plaintiff would not have purchased the product had it not been for the manufacturer's alleged deceptive acts. *Id*.; *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78 (1ˢᵗ Dep't 2004) (granting motion to dismiss § 349 and § 350 claims where "[plaintiffs] have impermissibly set up the deception as both the act and injury, a theory specifically rejected by our courts"). There must be something more. Here, Plaintiffs have failed to allege either that Defendant has been deceptive or misleading in a material way or that they have been actually injured by any alleged deception.

      1.    <u>Plaintiffs Do Not Allege that Target Was Deceptive</u>

"The New York Court of Appeals has 'adopt[ed] . . . an objective definition of deceptive acts and practices,' limiting them 'to those likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 701 (S.D.N.Y. 2019) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y. 20, 26 (1995)). Moreover, while NYGBL § 349 does not define what constitutes a "material" deception, the statute "is modeled after Section 5 of the Federal Trade Commission Act ("FTCA")" and "[t]herefore, this Court evaluates the materiality prong by examining the case law interpreting Section 5 of the FTCA." *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004). Applying this case law, a representation is

material for the purposes of NYGBL § 349 when it "'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Id*., citing *Novartis Corp. v. F.T.C.*, 223 F.3d 783, 787 (D.C. Cir. 2000).  A conclusory allegation that a party's choice was affected by an alleged misrepresentation or deception is insufficient to survive a motion to dismiss. *See Altschuler v. Univ. of Penn. Law Sch.*, 1997 U.S. Dist. LEXIS 3248, No. 95 Civ. 249 (LLS), 1997 WL 129394, at *10 (S.D.N.Y. Mar. 21, 1997) ("Conclusory allegations will not survive a motion to dismiss for failure to state a claim."); *Moses v. Citicorp Mortg. Inc.*, 982 F. Supp. 897, 903 (E.D.N.Y. 1997) ("Conclusory allegations have been held to be insufficient to state a claim under section 349."). The AC neither credibly pleads any deceptive statement or representation, nor that any alleged misrepresentation was "material" in any way.

First, Plaintiffs do not allege that the Heyday Chargers (whichever Heyday Chargers they purchased) failed to ever charge the products for which they were intended. On the contrary, both Bayne and Hart acknowledge that the Product they purchased "malfunctioned a week after" purchase and that neither were able to use the Product "since that time" (AC ¶¶ 6 and 9.) Clearly, the Heyday Chargers *did* work as intended at the time of purchase. The Complaint implies that the Heyday Chargers were intended to last longer than one week, but Plaintiffs never make even a single allegation that either Target or anyone else made any representation as to how long the Heyday Chargers were intended to last, or even a single allegation as to how long Plaintiffs themselves expected the Heyday Chargers to last. Nor do Plaintiffs identify any specific representations made on the Product's packaging, refer to any advertising statements, reference any instruction manuals or terms and conditions associated with the Product, or identify any representation at all beyond a vague assertion that the Product packaging "described features typical of phone chargers" (AC, ¶ 7).   In other words, Plaintiffs' entire claim rests on Target's

alleged failure to tell them that the Product "contained the Defect, which made it unsuitable and unusable for its intended purpose (*i.e.*, charging phones)" (AC, ¶54), but the AC itself acknowledges that at the time of purchase the Product was able to be used for exactly that purpose.

Second, Plaintiffs have not made any allegations, apart from a bare conclusory assertion, that any representation made by Target affected their purchase decision. Plaintiffs allege only that had Target disclosed the alleged defect "they would not have purchased the Product on the same terms, if at all." (Complaint, ¶57, AC ¶ 60.) As set forth above, such a bare conclusory allegation fails to establish that the alleged deception on the part of Target was "material." *See Bildstein*, 329 F. Supp. 2d at 414 ("[T]he Amended Complaint does not even plead that [defendant]'s concealment of its FCTF was a *material* omission. Instead, it asserts in conclusory fashion that 'Defendant's concealment of its FCTF violated § 349 of the General Business Law in that it never disclosed to its customers the existence of such conversion rate' . . . it is insufficient to state a claim under Section 349"). Having failed to allege any deception on the part of Target at all, much less a "material" deception, Plaintiffs' NYGBL § 349 claim fails.

    2.    <u>Plaintiffs Do Not Allege Any Actual Injury.</u>

As set forth above, a party cannot assert the damages necessary to state a claim under NYGBL § 349 by merely alleging that they bought a product they otherwise would not have but for an alleged deception. *See, e.g.*, *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 460 (S.D.N.Y. 2020) ("Plaintiff alleges that if he 'had [] known that the [Bagel] in fact contains only trace amounts of blueberries, he would not have considered it a blueberry bagel and would not have purchased it, or would have paid significantly less for it' . . . On the face of Plaintiff's own allegations, he would not have bought the Bagel if he had known its composition; one may reasonably infer that now that he is aware of the Bagel's ingredients, he will not purchase it again.

Therefore, Plaintiff lacks standing to seek injunctive relief" under NYGBL § 349). Indeed, the Court of Appeals "has rejected [the] very argument, i.e., 'that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349.'" *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3rd Dep't, 2007) (quoting *Small v Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)).  "Without further allegations that, for example, the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health, plaintiff's claim 'sets forth deception as both act and injury" and, thus, 'contains no manifestation of either pecuniary or actual' harm.'" *Pfizer*, 42 A.D.3d at 629 (quoting *Lorillard Tobacco*, 94 N.Y.2d at 56); *see also Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 162-63 (2nd Dept., 2010) (same).

Here, Plaintiffs have alleged no harm at all, other than the conclusory assertion that had the alleged defect been disclosed they might not have bought the Product, or would have done so for a lesser price (AC ¶¶ 7, 60.) But Plaintiffs do not allege that the price of the Heyday Charger was inflated as a result of any deception by Target. And while Plaintiffs refer to supposed third-party property damage or physical harm identified in the CPSC Complaints, Plaintiffs themselves have made no such allegations whatsoever. There is no allegation in the AC that either of the Plaintiffs were physically harmed by the allegedly defective Heyday Chargers, nor that their devices or any other personal property were damaged. [11]

---

[11] Further, there can be no dispute that Plaintiffs' claim under Section 349 rests on precisely the same facts as its defective claims for breach of implied warranty and violation of the MMWA. Target is aware of no case law that would permit a plaintiff to recover under Section 349 as a result of failing to comply with the requirements of the New York U.C.C. Indeed, to so permit would provide buyers the choice to deny sellers the opportunity to redress legitimate complaints in commercial good faith as contemplated by New York law and obtain a recovery by suing rather than engaging with an express warranty, just as remains available to Plaintiffs here

Plaintiffs' singular allegation that Target deceived them is intended to serve as both the act and the injury; this exact framework has been expressly rejected by the New York Court of Appeals. Plaintiffs' NYGBL § 349 claim, therefore, must be dismissed.

**D.      Plaintiffs Fail to State a Claim Under New York General Business Law § 350**

NYGBL § 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y.G.B.L. § 350. Courts in New York apply the same standards with respect to claims pursuant to both NYGBL § 349 and § 350. *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002) (stating the standard of recovery under NYGBL § 350 is identical to § 349). Accordingly, in failing to sufficiently allege the elements required to state a claim under NYGBL § 349, Plaintiffs have failed to state a claim under NYGBL § 350. *See Donahue*, 786 N.Y.S.2d at 154 (dismissing plaintiff's § 349 and § 350 claims for failure to allege actual harm); *Ballas v. Virgin Media, Inc.*, 60 A.D.2d 712, 713 (2d Dep't 2009) (same); *Strishak & Assocs., P.C.*, 300 A.D.2d 608, 609 (2nd Dep't 2002) (NYGBL § 350 claim properly dismissed where plaintiffs failed to show they were aware of allegedly false advertisement when purchasing printers manufactured by defendants).

As stated above, Plaintiffs have failed to allege either that Target engaged in any material deception or misrepresentation regarding the Heyday Chargers, or that Plaintiffs have suffered any harm. Moreover, the AC does not even refer to any advertising distributed by Target relating to the Heyday Chargers, or allege that Plaintiffs relied on any such advertising when purchasing the Product. Therefore, the NYGBL § 350 claim must be dismissed together with the § 349 claim.

**E.      Plaintiffs Fail to State a Claim for Fraudulent Omission**

To state a claim of fraudulent omission under New York law, a complaint must allege "(1) failure to discharge a duty to disclose; (2) an intention to defraud, or scienter; (3) reliance; and (4)

damages." *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 90-91 (2d Cir. 2005) (citing *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993)). Further, Rule 9(b) of the Federal Rules of Civil Procedure requires a complaint alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[12] Here, Plaintiffs' fail to allege any portion of their' fraudulent omission claim with any particularity, and crucially have failed to allege any intention or scienter on the part of Target, or that any harm has been suffered by Plaintiffs themselves. For these reasons, Plaintiffs' fraudulent omission claim must be dismissed.

First, Plaintiffs have failed to allege with particularity that Target owes any duty to them, or that they relied on any alleged omission by Target. The AC does not allege that Target owed any duty to Plaintiffs at all. And Plaintiffs' allegations as to reliance are entirely conclusory, offering no particularity as required under Rule 9(b). Plaintiffs assert only that Bayne and Hart each "expressly relied on Defendant's representations and warranties in deciding whether to purchase the product" (AC ¶¶ 7, 10), that Defendant made alleged "false and misleading omission . . . upon which Plaintiffs and members of the proposed Classes reasonably and justifiably relied" (AC ¶ 77), and that "Plaintiffs and members of the Classes purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose of charging batteries" (AC ¶ 88).

These allegations do not plead with particularity as required by Fed. R. Civ. P. 9(b) and CPLR 3016(b). Plaintiffs do not specify any statements they relied upon, why they relied on such statements, or why it was reasonable to rely on such statements. Such bare conclusory allegations cannot support a fraud claim. *See Grandy v. BAC Home Loan Servicing, LP*, 2012 U.S. Dist.

---

[12] "Similar to Federal Rule of Civil Procedure 9(b), New York C.P.L.R. § 3016(b) requires that 'the circumstances constituting [fraud] shall be stated in detail." *Goldberg v. Gray*, 2016 U.S. Dist. LEXIS 100802 at *24, 2016 WL 4099189 (N.D.N.Y. 2016)

LEXIS 47082, at *21-22 (E.D.N.Y., 2012) ("Even if the alleged fraud consisted of omissions, making plaintiff . . . 'the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud.'") (citing *Cohain v. Klimley*, 2010 U.S. Dist. LEXIS 98870, 2010 WL 3701362, at *20 (S.D.N.Y., 2010)); *Parrish v. Arvest Bank*, 717 F. App'x 756, 761-62 (10th Cir. 2017) (Plaintiff "fails to allege facts demonstrating her reliance on any misrepresentation by [defendant] regarding chronological posting. Under Rule 9(b), she must allege with particularity the 'consequences' of [defendant]'s false statements."); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193-94 (1st Cir. 1999) (stating that under Rule 9(b), a "plaintiff must not only allege the time, place, and content of the alleged misrepresentations with specificity, but also the 'factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the [misrepresentation], and were known and deliberately or recklessly disregarded by defendants.'") (cleaned up).

Second, Plaintiffs have failed to adequately allege that Target had any knowledge of any alleged defect with any Heyday Charger, which also precludes them from pleading that Target intentionally defrauded them or anyone else. Plaintiffs allege, again in purely conclusory terms, that "Defendant knew that the Product would be purchased and used without additional testing by Plaintiffs and members of the Classes" (AC ¶ 91.) The only alleged source of Target's knowledge of any alleged defect comes from the few CPSC Complaints and handful of cherry-picked online reviews (AC ¶¶ 23-35.) Indeed, Plaintiffs rely "heavily on the alleged online customer reviews to establish knowledge and scienter. But, without more, the mere existence of these online consumer complaints does not raise a reasonable, or even plausible, inference that Defendant intended to deceive consumers about the existence of a defect in its products." *Morales*, 2020 U.S. Dist. LEXIS

93307, at *24. *See also In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 909 (N.D. Cal. 2018) ("[A] handful of complaints do not, by themselves, plausibly show that [defendants] had knowledge of the defects and concealed the defects from customers."). Moreover, Plaintiffs' own allegation is that, for one specific type and color of Heyday Charger, 22% of the reviewers would recommend another purchase of the Product. (AC ¶ 29.) This allegation alone cannot square with the there is an inherent defect in each Heyday Charger that renders them "worthless." (*Id.* at ¶ 37.)

Third, Plaintiffs fail to adequately plead fraudulent intent. As a Court in this district recently stated, "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Campbell*, 2021 U.S. Dist. LEXIS 19624, at *34 (quoting *Davis v. Hain Celestial Grp.*, 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018)). When Plaintiffs' own AC concedes that a number of product users report positive experiences with a product and the willingness to purchase the product again, there is plausible allegation of fraudulent intent.[13]

Finally, as set forth above, Plaintiffs have not alleged that they have been damaged or harmed as a result of any purported fraudulent omission by Target. The only damage alleged by Plaintiffs is that they would not have purchased the Product had they known of the alleged defect. Plaintiffs are essentially claiming that the alleged fraud by Target is the harm for which they seek

---

[13]The CPSC Complaints do not bolster the online reviews and create a plausible inference that Target intended to deceive Plaintiffs or any of its consumers. As set forth above, there is nothing in the Complaint that suggests the Products purchased by Plaintiffs exhibited any of the characteristics that were the subject of *any* of the CPSC Complaints, and at least two of the CPSC Complaints, addressing a charger for an Android device and wireless earbuds (Carrier Dec., ¶ 17) are definitively irrelevant to Plaintiffs' allegations. The other CPSC Complaints all allege problems with overheating that occurred at some point after the complainant purchased a heyday product, even up to a year later (Carrier Dec., ¶ 13) Such complaints are irrelevant to Plaintiffs' allegation that the Products they purchased stopped functioning for unspecified reasons approximately one week after purchase.

recovery, but this cannot support a fraud claim any more than it can support Plaintiffs' NYGBL §

349 claim.  *See Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248, 270 (E.D.N.Y. 2007)

("under New York's out-of-pocket rule, direct pecuniary loss is the only measure of damages

available to plaintiffs in fraud cases; peripheral harms . . . are not cognizable injuries."); *First

Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) ("[T]he fraud defendant

is not liable for all losses that may occur, but only for those actually suffered . . . [a plaintiff] does

not allege actual injury by simply claiming that it incurred additional risk of loss as a consequence

of the fraud."); *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 143, 53 N.Y.S.3d

598, 603 (2017) ("Nominal damages are not available when actual harm is an element of the tort.").

Plaintiffs have not alleged physical injury or property damage. They have not even alleged that

they sought a refund for their purchase of the Product, much less that they were refused a refund.

Plaintiff's claim for fraudulent omission should be dismissed.

**F.     Plaintiffs' Unjust Enrichment Claim Must Be Dismissed**

Plaintiffs' unjust enrichment claim fails as a matter of law because it is entirely duplicative

of the other claims. "The basic elements of an unjust enrichment claim in New York require proof

that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience

militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch

Ltd., L.P. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). However, where an "unjust

enrichment claim is based on the same allegations as [a plaintiff's] other claims for consumer

deception . . . 'an unjust enrichment claim cannot remedy the defects.'" *Barreto v. Westbrae Nat.,

Inc.*, 2021 U.S. Dist. LEXIS 3436, at *23 (S.D.N.Y. Jan. 7, 2021) (internal citations omitted).

The instant case presents precisely the same type of unjust enrichment claim as in *Sitt v.

Nature's Bounty, Inc.*, 2016 U.S. Dist. LEXIS 131564, at *59-60, 2016 WL 5372794 (E.D.N.Y.

Sep. 26, 2016). There, as here, the plaintiff "alleged violations of GBL sections 349 and 350 as well as a claims for breach of express warranty under New York law" and the plaintiff's "unjust enrichment claim [was] based on the same allegations as those set forth in support of her other New York claims." *Id.* at \*59-60. There, as here, "[b]ecause [p]laintiff's unjust enrichment claims under New York law [were] based on the same allegations as her claims of violations of GBL sections 349 and 350 and breach of express warranty under New York law, and because [p]laintiff ha[d] not shown how her unjust enrichment claim differs from her other New York claims, Plaintiff's unjust enrichment claim under New York law is duplicative of her other New York claims." *Id.* Accordingly, the *Sitt* court dismissed the unjust enrichment claim. *See also Campbell*, 2021 U.S. Dist. LEXIS 19624, at \*39-40 (dismissing unjust enrichment claim as duplicative of plaintiffs' other claims, including breach of implied warranty, fraud, and MMWA).

Here, as in the cases cited above, Plaintiffs' unjust enrichment claim is duplicative of their GBL, fraud and breach of warranty claims – all of which fail for the reasons set forth above – Plaintiffs' unjust enrichment claim must also be dismissed.

## G.   Plaintiffs Lack Class-Action Standing

In addition to failing to adequately plead any of the claims included in the AC, Plaintiffs also fail to plead any facts that would grant them standing to bring this action on behalf of the Classes. In order to bring a class-action lawsuit, Plaintiffs must demonstrate class action standing to sue on behalf of absent class members. "The Second Circuit has articulated a two-step test that governs this analysis: (1) the plaintiff must show that she 'personally' suffered 'actual injury' because of the defendant's illegal conduct; and (2) 'such conduct' must implicate 'the same set of concerns' as those of the rest of the putative class." *Brown v. Daikin Am., Inc.*, 2021 U.S. Dist. LEXIS 85195, at \*13 (S.D.N.Y. May 4, 2021) (citing *NECA-IBEW Health & Welfare Fund v.*

*Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)). "'[T]o establish Article III standing in a class action for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.'" *Atik v. Welch Foods, Inc.*, 2016 U.S. Dist. LEXIS 136056, at *21-22 (E.D.N.Y. Sep. 30, 2016) (citing *NECA-IBEW*, 693 F.3d at 159.

      Here, for the reasons set forth above, neither of the named Plaintiffs have asserted a valid claim against Target, and therefore the entire AC – including the class-action allegations set forth therein (¶¶ 39-48) – must be dismissed.

## CONCLUSION

      For the reasons set forth above, Defendant Target Corporation's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted in its entirety, and the Court should award such other relief it deems just and equitable.

Dated:  Minneapolis, Minnesota
       October 12, 2021

                            /s/ David J. Carrier
                        David J. Carrier, Esq.
                        (admitted pro hac vice)
                        Matthew A. Beyer, Esq.
                        Lewis Brisbois Bisgaard & Smith LLP
                        90 South 7th Street, Suite 2800
                        Minneapolis, MN 55402
                        Telephone: (612) 428-5000
                        Facsimile: (612) 428-5001
                        david.carrier@lewisbrisbois.com
                        *Attorneys for Defendant*

CC (via electronic filing):
Max Stuart Roberts
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
Mroberts@bursor.com
*Attorneys for Plaintiffs*