USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/23/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MIEKE BAYNE and ALYSSA HART, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

TARGET CORPORATION,

Defendant.

---

1:21-cv-05938 (MKV)

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Mieke Bayne and Alyssa Hart brought this putative class action against Target Corporation ("Target"), asserting six causes of action sounding in fraud, breach of warranty, and unjust enrichment.  Specifically, Plaintiffs allege that Target manufactured, marketed and sold hundreds of thousands of defective phone chargers, which would malfunction after only a week of normal use.  Target seeks dismissal of this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Target's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The Court draws its facts from the Amended Complaint [ECF No. 21], the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Target is a retail store franchise that owns and operates nearly two thousand general merchandise stores nationwide.  [ECF No. 21] ("AC") ¶ 15.  Among the various items sold by Target is a charger for iPhones and iPads called the Heyday Charging Cable (the "product" or the "Heyday Charger").  AC ¶ 15.  The Heyday Charger comes in various lengths, but all versions of

the product are otherwise identical.[1]  AC ¶ 16.  The packaging for this product describes features

typical of phone chargers, while emphasizing its "high charging speed."  AC ¶¶ 7, 17.  The

product sells for approximately $10, and Target, as the product's exclusive retailer, has sold

hundreds of thousands of units.[2]  AC ¶¶ 11, 18, 21.

The problem, Plaintiffs allege, is that "[t]he Product is of extremely poor quality and uses

inferior manufacturing materials, which causes the Product to break and cease working as a

phone charger shortly after purchase."  AC ¶ 19.  These latent manufacturing defects manifested

in various ways, "such as the plug breaking or the cable overheating."  AC ¶ 38.  This resulted in

eight consumer complaints regarding the product being filed with the Consumer Product Safety

Commission ("CPSC"), and in one model of the product being recalled in January 2019.  AC

¶¶ 30-35.  But the defects were never cured.  AC ¶ 36.

The problems with the product soon resulted in a barrage of negative reviews on Target's

website.  AC ¶¶ 23-24.  In 2019, for instance, a consumer gave the Heyday Charger a review of

one out of five stars, writing: "I've purchased two of these, the braided cable and the flat cable,

and neither lasted more than a couple of weeks.  I'm very careful with my cables so as not to

bend them and break the wires near the port.  They just quit working.  Total waste of money.

The $5 cables from the bargain section last longer."  AC ¶ 25.  In 2020, a different customer

gave the Heyday Charger a review of one star, providing: "I had the braided 6 ft cord for less

than 2 weeks.  Last night I tried to plug it in and the part that plugs into the phone came off.  No

pushing.  Just broke off when I tried to charge my phone."  AC ¶ 26.  Other customers left

---

[1] Other allegations in the Amended Complaint suggest that the Heyday Charger also comes in different colors and with different types of cord (*e.g.*, braided and flat).  AC ¶¶ 25, 29.  The Court will assume for the purposes of this motion that the chargers are otherwise identical in every way.

[2] Target suggests in its briefing that it has sold "millions" of Heyday Chargers.  [ECF No. 28 at 13].

similar reviews.  AC ¶¶ 27-28.  In fact, the reviews for one model of the Heyday Charger had an average review of 2.2 stars, based on 323 reviews, and 78% of reviewers reported that they would not recommend the product to others.  AC ¶ 29.

Plaintiffs Bayne and Hart were among the frustrated customers.  Bayne bought a Heyday Charger from a New York Target store in December 2020.  AC ¶ 5.  The product began to malfunction a week after it was purchased, becoming so hot to the touch that Bayne could not safely charge her phone or any other device.  AC ¶ 6.  Hart bought two Heyday Chargers from a New York Target store in June 2021.  AC ¶ 8.  However, the charger broke at the tip only a week after it was purchased, making it impossible to charge her phone or any other device.[3]  AC ¶ 9.  Bayne and Hart both bought the Heyday Chargers after reviewing the packaging and concluding that the product would adequately serve the purpose of an ordinary phone charger.  AC ¶¶ 7, 10.  Had the product's defects been disclosed, Bayne and Hart would never have bought the product, or would have done so only for a substantially reduced price.  AC ¶¶ 7, 10.

## PROCEDURAL HISTORY

Plaintiffs initiated this action by filing a putative class action complaint on July 9, 2021.  [ECF No. 1] ("Complaint").  Plaintiffs brought causes of action for (i) breach of implied warranty; (ii) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (iii) violation of New York General Business Law § 349; (iv) violation of New York General Business Law § 350; (v) fraud; and (vi) unjust enrichment.  Complaint ¶ 4.  Plaintiffs sought to represent "all persons in the United States who purchased" the Heyday Chargers (the "Class")

---

[3] While it appears that Hart bought two Heyday Chargers, it is unclear whether the alleged malfunction happened to only one of those chargers, or to both.

and also sought to represent a subclass of all Class members who purchased Heyday Chargers in the State of New York.  Complaint ¶¶ 36-37.

Target brought a timely motion to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [ECF Nos. 13-16].  This motion to dismiss asserted, among other things, that "[t]he breach of implied warranty claim fails . . . because Plaintiffs have failed to allege that they provided any notice of any alleged defect of any product they purchased."  [ECF No. 15 at 2].  On August 31, 2021, Plaintiffs sent Target a "Demand Letter," which outlined their claims.  [ECF No. 21, Ex. 1].

On September 21, 2021, Plaintiffs filed an Amended Complaint, which alleged the same six causes of action as in the original Complaint, and sought to represent the same classes.  [ECF No. 21].  Target filed a motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6). [ECF No. 27].  That motion was accompanied by a memorandum of law [ECF No. 28] ("Def. Br."), and a Declaration of David J. Carrier [ECF No. 29] ("Carrier Decl.").[4]  Plaintiffs opposed that motion [ECF No. 42] ("Opp."), and Target replied [ECF No. 43] ("Reply").

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

---

[4] This Court has reviewed the Carrier Declaration, and the exhibits attached thereto, and has concluded that nothing provided therein affects the analysis of the current motion.  As a result, this Court need not consider what aspects of the declaration (if any) may be properly considered at the pleadings stage.

## DISCUSSION

### I.     BREACH OF IMPLIED WARRANTY CLAIM

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 230 A.D.2d 326, 656 N.Y.S.2d 787, 789 (3d Dep't 1997). "To state a claim for a breach of the implied warranty of merchantability, plaintiff must allege that the product was defectively designed or manufactured, that the defect existed when the manufacturer delivered the product to the purchaser, and that the defect is the proximate cause of the plaintiff's injury." *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018). Moreover, to assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a).

The Court finds Plaintiffs have adequately alleged facts which, if proved, would support a claim based on breach of the implied warranty of merchantability.

#### A.   Notice

Plaintiffs filed the initial complaint in this action on July 9, 2021. That is roughly seven months after Bayne discovered the defect in the Heyday Charger, and about one month after Hart discovered the same. Neither Bayne nor Hart provided Target notice of their claims before filing the complaint. When Target moved to dismiss the complaint on that basis, Plaintiffs sought to moot the issue by sending Target a "Demand Letter," and thereafter amending their complaint to allege that notice had been provided. AC ¶ 94. Target argues that the letter was too late, and that Plaintiffs' failure to provide pre-litigation notice is fatal to their claim.

Courts within this Circuit are divided on the issue of whether notice must be given prior to any litigation. Most have held that notice is required as a condition precedent to filing a

lawsuit; some have held that a timely filed complaint is sufficient to satisfy the notice

requirement.  (The split is detailed in the margin.[5])  But the (surprisingly sparse) case law from

New York courts is clear.  In rejecting a lack of timely notice argument, the Appellate Division,

Second Department explained unequivocally that "the complaint and subsequent amended

complaint . . . themselves constituted such notice."  *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242

A.D.2d 690, 662 N.Y.S.2d 584, 586 (2d Dep't 1997).  Invoking that Appellate Division finding,

a New York trial court expounded (albeit in dicta) on the reasoning that would allow a complaint

to serve as notice:

> After acceptance, the seller is entitled to believe that the transaction
> has satisfactorily ended, and it is the buyer's duty to inform him
> otherwise or waive his objections.  The notice of breach, therefore,
> is simply required to disabuse the seller of the notion that the rights
> of the parties have been fully determined.
>
> Timely commencing litigation through a formal complaint would
> obviously accomplish this task.  Various ancillary virtues have been
> attributed to the 2-607 notice, such as affording the seller the
> opportunity to investigate the claim while the facts are fresh, take
> whatever steps it deems necessary to defend itself or offer a cure or
> remedy.  However, the mere fact that the buyer has chosen to drag
> the seller into court in the first instance does not prevent the seller
> from doing any of these things; indeed, the normal rules of civil
> procedure are designed to accomplish exactly these tasks within the
> litigation process.  The court notes, moreover, that in contrast to
> rejection (UCC 2-508), the seller has *no right* to cure accepted
> nonconforming goods.  The UCC does not require pre-action
> mediation, and the court will not read Section 2-607 as creating such
> an obligation.

---

[5] *Compare Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020) (holding that "Plaintiffs must allege some form of timely, pre-litigation notice"); *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 282 (S.D.N.Y. 2021) ("Because [plaintiff] failed to allege pre-suit notice in a non-equivocal manner, the complaint fails to state a claim for breach of warranty under New York law."), *with Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d 523, 534 (S.D.N.Y. Mar. 4, 2021) (finding that there is no "hard and fast rule under which a complaint filed promptly after discovery of injury could not supply notice"); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 262 n.6 (E.D.N.Y. 2014) (holding that a plaintiff was not "required to provide pre-suit notice of the alleged warranty breaches," as "New York cases applying N.Y. U.C.C. § 2-607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases").

*Mid Island LP v. Hess Corp.*, 41 Misc.3d 1237(A), 983 N.Y.S.2d 204, 2013 WL 6421281, at *4 (N.Y. Cnty. Sup. Ct. Dec. 2, 2013) (citations omitted).[6]  This reasoning is persuasive.[7]  More importantly, with no evidence to suggest that the New York Court of Appeals would reach a different conclusion, "[w]e are bound . . . to apply the law as interpreted by New York's intermediate appellate court[]."  *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).

Based on this authority from the New York courts, the Court concludes that Plaintiffs' claim does not fail merely for lack of pre-suit notice.  "It will be for the finder of fact to determine whether plaintiffs filed their complaints, and hence gave notice, sufficiently timely."  *Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d 523, 534 (S.D.N.Y. Mar. 4, 2021).

### B.  Merits

Target contends that even if Plaintiffs properly provided notice, their claim must be dismissed because they failed to demonstrate that Target knew that the product suffered from any defects.  But knowledge of a defect is not an element of a breach of implied warranty claim.  The only two cases that Target cites to the contrary concern the defense available to retailers who could not discover through ordinary inspection the alleged defect in a sealed product.  *See Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 422 (S.D.N.Y. 2011) ("For claims for

---

[6] The recent trend in this district of requiring pre-suit notice has stemmed from a misinterpretation of *Hess*, focusing exclusively on the opinion's loosely crafted line that "timely notice is a condition precedent to bringing an action for breach of warranty." 41 Misc.3d 1237(A), 983 N.Y.S.2d 204, 2013 WL 6421281, at *4.  Reading the entirety of the *Hess* opinion makes clear that this statement by the New York justice related to the *timeliness* of the notice and *not* to whether commencement of the lawsuit can itself constitute notice—an issue the trial court had no need to decide since pre-suit notice was given. *Id.*

[7] The reasoning is especially persuasive in the context of a putative class action where, as here, the failure to provide pre-suit notice could easily be circumvented by having plaintiffs' counsel (no doubt the driver of this litigation) find a new named plaintiff who will provide perfunctory notice before commencing another suit.  To require pre-suit notice as a condition precedent to bringing a claim would thus result in a waste of resources and would promote form over function.

breach of warranty and negligence, a retailer cannot be held liable for injuries sustained from the contents of a sealed product even though a test might have disclosed a potential danger because there is no obligation upon it to make such a test." (internal quotation marks omitted)); *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 531-32 (S.D.N.Y. 2018) (same).  This standard is unique and has not, so far as the Court can tell, been expanded to cover breach of warranty claims for any other category of products.  The Court will not convert the exception into the rule, especially not in a case where the retailer also is alleged to have manufactured the defective product.  AC ¶¶ 1, 86, 87.  The Court thus rejects Target's argument that the breach of warranty claim must be dismissed for lack of knowledge, which is the only basis on which Target challenges the merits of the claim.

## II.     MAGNUSON-MOSS WARRANTY ACT CLAIM

Target argues that Plaintiffs claim under the Magnuson-Moss Warranty Act ("MMWA") must be dismissed for lack of subject matter jurisdiction.  Section 2310(d)(1)(B) of the MMWA creates a cause of action for breach of warranty, which may be brought "in an appropriate district court of the United States, subject to paragraph (3) of this subsection."  Paragraph 3, in turn, provides:

> No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 . . . ; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3).

Plaintiffs do not dispute that they brought this action as a putative class action, that the action has fewer than one hundred named plaintiffs, and that, as a result, the third prong of MMWA's jurisdiction requirement is not satisfied.  Plaintiffs argue, however, that their MMWA

claim still survives because this Court has federal subject matter jurisdiction over their claims

pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  This Court disagrees.

As the majority of other courts to have addressed this issue have persuasively reasoned,

Plaintiffs' position "is flatly contradicted by the plain text of the MMWA," which "provides that

'[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection'—*i.e.*,

a suit brought under the MMWA in federal district court—unless the MMWA's independent

jurisdictional requirements are met."  *Ebin v. Kangadis Food Inc.*, No. 13-cv-2311, 2013 WL

3936193, at *1 (S.D.N.Y. July 26, 2013); *see also Floyd v. Am. Honda Motor Co.*, 966 F.3d

1027, 1035 (9th Cir. 2020) ("CAFA may not be used to evade or override the MMWA's specific

numerosity requirement.").[8]  Plaintiffs MMWA claim must therefore be dismissed for lack of

subject matter jurisdiction.

### III.   NEW YORK GENERAL BUSINESS LAW SECTIONS 349 AND 350

Plaintiffs have brought consumer protection claims under New York General Business

Law Sections 349 and 350.  "The standard for recovery under General Business Law § 350,

while specific to false advertising, is otherwise identical to section 349."  *Goshen v. Mutual Life*

*Ins. Co. of New York*, 98 N.Y.2d 314, 324 n.1, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002).  In

order to plead a sufficient claim under either section, "a plaintiff must allege that the defendant

(1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and

(3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice."

---

[8] A minority of courts have held that where "the jurisdictional prerequisites of CAFA are satisfied, it may exercise subject-matter jurisdiction over a claim under the MMWA without regard for whether the jurisdictional prerequisites of that statute are also met."  *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015).  But no court has come to that conclusion where, as here, plaintiffs failed to invoke CAFA in their complaint as a basis for federal jurisdiction.  *See Weisblum*, 88 F. Supp. at 295 ("Plaintiffs have not invoked the MMWA as a basis for the Court's *jurisdiction*.  Instead, Plaintiffs rely on Class Action Fairness Act."); *see also* AC ¶¶ 12-14 ("This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under a law of the United States (the Magnuson-Moss Warranty Act, 15 §§ 2301, *et seq.*).").

*Weisblum v. Prophase Labs. Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (citing *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 883 N.Y.S.2d 772, 911 N.E.2d 834 (2009)). "Deceptive acts are defined as acts that are likely to mislead a reasonable consumer acting reasonably under the circumstances." *In re Scotts EZ Seed Litig.*, No. 12-cv-4727, 2013 WL 2303727, at *10 (S.D.N.Y. May 22, 2013) (internal quotation marks omitted).

Plaintiffs claim that Target's misleading conduct took place by omission, *i.e.*, that Target misled investors by failing to disclose the latent defects in the product. Opp. at 12. The standard applied to an alleged omission is different than the one applied to an alleged misstatement. "[A] plaintiff claiming an omission constitutes actionable deception must show either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information." *Kyszenia v. Ricoh USA, Inc.*, No. 20-cv-2215, 2022 WL 326981, at *4 (E.D.N.Y. Feb. 3, 2022). This puts Plaintiffs in a bind. The main thrust of their argument is that Target knew that the product was defective because of the negative reviews on their website and the reports filed with the CPSC. Critically, however, Plaintiffs never alleged that this information was not readily available to them. This is unsurprising, given that both sources are available to the public. And while consumers cannot be expected to peruse the CPSC reports before making any small purchase, a quick trip to Target's website hardly seems unusual or overly burdensome. Had Plaintiffs done so, they would have seen the negative reviews, and could have made a more informed purchasing decision.[9] This Court thus dismisses this claim for failure to plausibly plead deception through omission.

---

[9] Target claims that the fact that 22% of the reviewers would recommend another purchase of the product defeats Plaintiffs' assertion that Target knew of the alleged defect, as it demonstrates that product was not inherently defective. Reply at 9. This is a glass-half-full mentality. The fact that the Heyday Charger might not have proven inadequate *every* time does not mean that Target was unaware that it was generally faulty.

## IV.     FRAUDULENT OMISSION

To state a claim of fraudulent omission under New York law, a complaint must allege "(1) failure to discharge a duty to disclose; (2) an intention to defraud, or scienter; (3) reliance; and (4) damages." *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 90-91 (2d Cir. 2005). A duty to disclose arises "where the parties enjoy a fiduciary relationship" or "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Lerner v. Fleet Blank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006). Plaintiffs do not allege that Target owed them a fiduciary duty. And, for the reasons discussed above, Plaintiffs have failed to adequately allege that Target possessed information that was not readily available to them. As a result, this claim must be dismissed.

## V.      UNJUST ENRICHMENT

"To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021) (internal quotation marks omitted). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012). Accordingly, an unjust enrichment claim "will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Campbell v. Whole Foods Mkt. Grp.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) (internal quotation marks omitted). Here, Plaintiffs have offered no explanation of how its unjust enrichment claim differs from its other causes of action, which seek the same relief for the same conduct. As such, the motion to dismiss Plaintiffs' unjust enrichment claim is granted.

## VI.    CLASS ACTION STANDING

"A plaintiff seeking to represent a class must personally have standing." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  "To establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (internal quotation marks omitted).  Target claims that there is no class action standing because neither plaintiff has asserted a valid claim against Target.  As discussed above, Plaintiffs have plausibly stated a valid breach of warranty claim against Target.  As a result, Plaintiffs have standing to pursue their breach of warranty claim on behalf of the putative Class.

## CONCLUSION

As set forth herein, Target's Motion to Dismiss Plaintiffs' Amended Complaint is GRANTED IN PART and DENIED IN PART.  Specifically, Target's motion is granted in all respects except as it relates to Plaintiffs' breach of implied warranty claim.

Having dismissed the MMWA claim, which was the sole basis on which Plaintiffs invoked federal jurisdiction, the Court directs the parties to submit simultaneous letter briefs within fourteen (14) days of this Order, addressing whether the Court retains jurisdiction over the matter under CAFA and/or whether the Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The Clerk of Court respectfully is requested to close the Motion at ECF No. 27.

**SO ORDERED.**

**Date:   September 23, 2022**
       **New York, NY**

                                 **MARY KAY VYSKOCIL**
                                 **United States District Judge**